So let's go ahead and get started with USA v. Reid. Each side will have 15 minutes. If appellants would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your time. Ms. Zink, good morning and welcome. You may begin when you're ready. Good morning, Your Honors. Marla Zink on behalf of Richard Reid. I will endeavor to reserve five minutes for rebuttal and I'd like to speak this morning on both issues, both the insufficiency of the evidence and the unconstitutionality of the sentencing condition. With regard to the insufficiency of the evidence, the government here charged Mr. Reid under the anti-kickback statute. This required the government to prove that Reid and or the lab NWPL solicited or received kickbacks for referral of testing specimens covered by government healthcare programs. This is otherwise known as the remuneration element. Taking all reasonable inferences in the prosecution's favor, the evidence was insufficient and the government failed to prove its case. Instead, the evidence showed that the parties entered into lawful contracts called ASAs that were safe harbors or not remuneration if fulfilled. Ms. Zink, can you please let me know what marketing did NWPL do for the smaller companies, SRL and MTL? Yeah, NWPL and Reid fulfilled them all. They solicited and arranged for and recommended that potential customers utilize Sterling. It did so in various ways, including packaging and selling an attractive model of one-stop shopping for customers so that all specimens could be sent to a single lab to NWPL and NWPL handled all the shipping and processing services to get those samples that were tested by government health care programs to MTL or Sterling. NWPL and Reid trained a sales force to be able to faithfully execute the terms of the ASA and they maintained customer rapport in a competitive market and Reid was specifically sought out for these skills. Was there proof at trial of performance under these agreements? Yes, and I would refer the court to, I mean, the agreements are lengthy and the provisions of marketing are lengthy so I won't have time to recite all the pages. I'm not asking you about the content of the agreement. Correct. My question is, what evidence was there before the jury that these contracts were actually performed? Yes, so that evidence is cited in the reply brief at page 3 through 7 and in the opening brief at and page 7 through 11 for so the marketing services are at page 3 through 7 so there's 13 specific provisions for marketing and in the reply brief at pages 7 through 11 I stepped through all the other services so there's 13 other services that were provided. I probably should have asked this question as carefully as I should have. Was there evidence before the jury, not of the contents of the agreement, but actual performance under the agreement? For example, did someone get on the stand and say, yes I would have the benefit of these agreements and here's what was done for me for the remuneration that I provided? Yes, absolutely, and those are cited in those pages that I said. So for example, representatives from NWPL met regularly to discuss marketing that is at 3 ER 414 to 415. Reid understood well Sterling's business needs and abilities and he executed a strategy to complement and improve that so that's at 3 ER 392 through 93. They met the lab's marketing and sales objectives through promotion programs and field action plans. You can look at 4 ER 632 to 33, 4 ER 690 through 91, 10 ER 2417, etc. I mean there's a lot of what I'll say sort of sprinkled evidence but here of course on the sufficiency of the evidence was pretty high bar as you well understand and it seems like during this time there's a there's a lot of evidence in the record like they never created a marketing company yeah they went to talk to people but they didn't talk for example they might have provided specimens but did they do marketing so it seems to me that it's not that they might have done a few sprinkled things but whether the record really supports that the jury could reasonably find that they really didn't live up to the agreements but for example like one example I'll give you is they created this company to market RYSE was the company but did it do anything I don't think it ever marketed anything so I think the jury is left with a few sprinkled examples but overwhelmingly they just didn't do anything so what's your response to that yeah I respectfully disagree so the the question comes down to how marketing is defined and the anti-kickback statute does not define marketing but it does provide that there can be a lawful contract a safe harbor and that's what the ASA's were and the ASA's very specifically defined marketing and as marketing is defined in the ASA's all those terms were fulfilled and that comports with the dictionary definition for marketing as well so the government puts forth this sense of what marketing should have been that it should have and NWPL saying Sterling's name all the time bringing brochures with them to make sure that they were handed out to every customer but none of that is in the contract so the what was required was proof according to the contract as the inspector general testified that contract was lawful if fulfilled and the evidence showed that all the terms of the contract were fulfilled it is not relevant if read or NWPL also didn't do what the government expects from marketing or what the jury might have expected in their lay experience what matters is what the elements are and what the contract was and the same is true with regard to the evidence that the government tries to put forth such as the lab guidelines so the lab guidelines said that employees shouldn't be talking about a partnership with Sterling in particular but it did say that they should be talking about a partnership with a lab if the reasonable inference from that evidence is that if the that there was no unlawfulness in the partnership with the lab and employees did in fact know about Sterling and they there were the people that were processing the samples at NWPL were all aware that they were going to Sterling there was testimony from Sills one of the physician customers that he was aware that there was a relationship with Sterling not knowing the extent and the salesperson Catano testified the same so again it may not have been in the way that the government expected but it is in the way that the law requires and if the court doesn't have further questions on that I will turn to the yes one quick one one or more of his co-defendants entered please yes yes several co-defendants enter entered please he was the only one that went to trial did any of them testify no thank you yes and just I'll do one more point there and just talk about the volume language that was also this is another example of the government being untethered from the law and so the the anti-kickback statute prohibits the discussion of or taking volume into account for as compensation but it doesn't prohibit talking about volume and it doesn't prohibit talking with physician customers about who are using private pay models about volume so it's very important to look at the terms of the statute and then actually what the says rather than how the government summarizes it in regards to standard sentencing condition 10 and this condition is a complete ban on weapon ownership possession and access during intended to imply to everyone on supervised release during the entire period of supervised release after release from imprisonment this is the Second Amendment problem as applied to read where his crime relates to health care frauds he has no history or present finding of violence or propensity for violence counsel is read making a facial or an as applied or both challenge we are we are challenging it in both regards and the courts find it unconstitutional on either or both grounds if it doesn't reverse on the sufficiency of the evidence he's now a convicted felon that's correct but it's still subject as a convicted felon he cannot possess firearms correct so 922 G provides restrictions on that those challenges to that wouldn't be ripe and are not before the court in this case but that doesn't mean that there can't be a separate challenge to standard sentencing condition 210 and that it isn't also subject he's still under a sentence so long as he's on the supervised release correct that's right and and when that distinguish him from some cases where it's talking about pretrial or other circumstances right so each circumstance should be taken by this court and it's individual setting and in the case of supervised release the there are constitutional rights that are restricted but none that are completely lost like the Second Amendment right so the Fourth Amendment right might be restricted freedom of travel might be restricted during supervised release but this is a total ban on the Second Amendment rights during the entire period of supervised release and both the US Sentencing Commission and are the guidelines and Western District of Washington probation say that this should be imposed on every individual and there was no individual finding made so there's no finding that it's crime-related or necessary to deter or protect the public and so that's still important in the case of us of a sentencing condition even though it's part of the sentence did mr. Reid object to the condition of release number 10 while he was in the district court he did not and there and it was not individually discussed at all so are we looking at de novo review or planar so this courts precedent has been somewhat complicated on that and the court has applied both the most applicable here should be de novo review because it is a legal challenge to a legal issue and the records fully developed and there's no prejudice to the to the prosecution however we also carry the case under plain error standard and that's in the briefing as well and in terms of the government's burden here it's their burden to show in historical tradition through founding error analogs that are similar in both the how and the why and in each of the analogs that the government provides or even those cited in more or in Jackson the supplemental authority cited on Friday the government fails on the how or the why on every single one of those counsel is that your position that any time an individual is convicted of a nonviolent offense district court cannot impose a standard sentencing condition number 10 basically saying you're not allowed to have weapons during the pendency of your probationary period well I don't think the court the government has shown in historical tradition of dispossession complete dispossession during a period following incarceration while someone still on a sentence so yes I think that would also apply to violent felons but as applied to read who is a nonviolent felon that absolutely would be the case and courts should be at least be making an individualized finding as to it so if he were a violent felon is your position that this supervised release provision would have been constitutional no I we are making a facial challenge and I do not believe that the government has shown an historical tradition so that needs to be a broad set of laws that were in place at the founding error and we know from we have affirmative evidence of no historic tradition towards even violent felons at the founding error this court in Chauvin noted that there had the first federal firearm restrictions for violent offenders wasn't until 1938 in this country and there's also a UCLA law review article in the now vacated Duarte opinion that talks about the fact that there was no law limiting gun possession for people convicted of crimes at all at the founding error so we have affirmative evidence of that as well imagine that he was in prison still and they said you can't have a gun in prison makes total sense of course but what kind of colonial statute would the government have to come up with in order to justify that being relevantly similar for example under rock meaning right so the how and the why would have to be similar so the how would be that there would be no possession of firearms or dangerous weapons allowed while someone is held in prison or jail there were jails and prisons then and also to show that the why was similar so presumably the why here is to protect public safety to deter the conduct to begin with and to work towards rehabilitation and so those would all have to be present in a tradition that was at the founding and even though the prison says look you can't have a gun in here then I guess it would be unconstitutional to put that prohibition on him correct it could be while incarcerated but that's not the challenge that issue here right we're talking about post the same analysis applies correct that does the Second Amendment analysis thank you your honors I'll reserve the remainder okay thank you miss Colbertson and did I pronounce your name correctly wonderful good morning Tanya Colbertson on behalf of the United States viewing the evidence in the light most favorable to the any rational trier of fact could find here that read knowingly and willfully solicited and received kickbacks for referring government samples to sterling and MTL and that he conspired with others to do so read argued his defense to the jury that the payments from those outside labs were for marketing and personal services under contracts and so fell within a regulatory safe harbor but the government's evidence showed that was not the case the jury simply rejected reads interpretation of the facts which he is now trying to re-argue on appeal now under the anti-kickback statute referrals only must be one of the purposes of the solicitation or payment so it's not a defense that some other services may have been provided to that comes from this court's decisions in United States versus Hong and United States versus cats in cats which was also a case involving lab specimens the court said that the statute only requires that one purpose of the payment be to induce future referrals even if the payments were also intended to compensate for professional services I also want to direct the court to the language of the safe harbor provision itself under that safe harbor at 42 CFR 1001 dot 952 D it says that to fall within the safe harbor compensation under the contracts must quote not be determined in a manner that takes into account the volume or value of any referrals or business otherwise generated now extensive evidence here show the jury that these ASA is these contracts were indeed determined taking into account the volume and value of the samples that reads lab was going to send over to sterling and MTL and this court should also look at how the evidence of how the contracts were actually implemented how the contracts were implemented is relevant to this inquiry and it supports this understanding because in truth very little if any marketing of sterling and MTL was done now Northwest Physicians Lab went out and marketed itself it certainly sent out its own sales force to doctors to recruit them to use the lab but salesperson after salesperson testified that they were not trained to discuss sterling or MTL and that the lab guidelines which opposing counsel reference made it a fireable offense to mention the name sterling and then you have sort of the the lies that read told to the physicians that he was recruiting and the lies that he told to his own workforce about the existence of these contracts with these outside labs so I know we've cited a lot of the evidence in our briefs as to how during negotiations read was you know certainly taking into account the volume and the value of the samples that Northwest Physicians Lab would be sending over to the outside labs and then you have all of the evidence of how the contracts were actually implemented and the lack of marketing from the the outside labs under these ASA's testify yes yes two representatives I believe at least from sterling testified I don't believe that the manager of MTL testified they said that they didn't have insight into what kind of marketing was being done under the contracts they could see that their volume of samples was increasing they were receiving samples from Northwest but they said they didn't have insight into how the marketing was done and one of the representatives from sterling said that when he asked to audit the company he was rebuffed that J Lee said you know no absolutely not you can't do that and read in fact said please don't reach out to our clients these are our clients don't contact them directly when Reid solicited samples from physicians yes did he tell them that his lab couldn't process federally insured patients I believe the evidence showed that if he was asked he would say you know we send them to an outside lab but he would not necessarily mention the names of those outside labs or the arrangement by which that was done when he did mention sending federally insured patients samples to outside labs did he tell them he was being paid for doing that he did not know in fact he outright denied that to two doctors that asked you know if there was any kind of relationship he said and this is at 5 er 847 to 49 that the lab and its officers and managers had quote no direct or indirect financial relationship with sterling he said that the testing of samples did not give a return to the labs shareholders and via attorney opinion letters he shared that the lab had no financial interest his lab had no financial interest in the outside labs so we think the evidence here is more than sufficient as to all counts including the conspiracy count if the court has no further questions on sufficiency I'll turn to the second amendment reviews here should be for plain error as Reid did not object to the firearm condition at sentencing nor raise any issue about its constitutionality Reid sentencing took place at least six months after Bruin so this is not a situation where you have you know a new decision the day before sentencing is there any evidence that in the span of Reid's contact within the confines of the indictment that he brandished a weapon or used a weapon or displayed a weapon there there no that that was not in his offense conduct the evidence of his offense conduct now I do want to ask for this condition probation asked for this condition so probation submitted it in its recommended sentence to the court why they did not give I think specific this is a standard condition in this is a standard discretionary position check check check that is correct but I will tell the court that at 1 ER 24 the district court said I am adopting probation recommendations as to all of the conditions so so it's not that there was nothing in the record indicating that the court thought this condition was appropriate the court accepted the recommendation from probation and you know this is a condition that was imposed other than a checklist was there anything in the probation report which you tell us was adopted by the district court to suggest the reason for imposing this kind of condition on a non-violent offender I don't think there is anything spelled out in particular as to this defendant I will say that in general this condition there are good reasons for this condition and it makes good sense why probation recommends it for its felony offenders that supervising somebody on supervised release can be dangerous probation officers make unannounced visits to put to supervise these houses and so I think you know just the public safety reasons of probation you know imposing the standard in all or most cases are quite clear history about firearm use or display no the only mention of firearm use we have in reads history is is after after he was sentenced when he failed to report that there was some concern there that when he was a fugitive for 12 days he may have been armed I I know the court obviously couldn't take that into account because it happened after sentencing but I would say it does support the notion that even with non-violent offenders even for somebody who's committed a financial crime or a health care crime they may do unpredictable things and there's good reason to allow the imposition of this condition and going back to plain error of you which I think is what applies here no court has held that this firearm condition violates the Second Amendment so even if the court feels like it was error here it was not error that was plain let me push back on that counsel for mr. Reid said that we should just do you won't be prejudiced it's you know we have everything here to be able to do that what's your response so I I don't think this is a pure question of law the record was not developed below on this and we mentioned this in a footnote in our supplemental brief that there is a burden at step one for the challenger to show that the proposed course of conduct and the weapon falls within what the Second Amendment protects and so at a very minimum it may not be a heavy burden but mr. Reid did have to say I want to possess a gun and here is why and I would direct the court here to United States versus Perez Garcia in that case which obviously involved pretrial conditions the defendants each filed a motion after the pretrial condition was imposed and they said why they wanted a gun what kind of gun they you know as to one of the defendants it was because he wanted to work as a armed security guard to support his family as to the other defendant I believe he said he had to travel for work a good deal and he preferred to be armed while he did that so there you have a developed record on that first step and so I don't think that that you know in deciding whether or not the record is developed it's fair to just assume that you know as a matter of law this does it matter here because as you argue it sounds like a remand would be in order to see whether step one was complied with if we don't think that that a remand really makes sense here because I do think that even on the merits under DeNova review it we failed that Reid fails at step two also you know Reid has a mechanism for for challenging this condition and getting to know for review he can still file a motion to modify his conditions in the district court before you know when he begins his term of supervision or even during his term of supervision so it's not that you know he has no way to have this this issue received in over review I just don't think it's appropriate for the court to give DeNova review here on this record I can move to step two briefly Perez Garcia which I've discussed has already accepted the constitutionality of disarming pretrial defendants who are awaiting trial even on nonviolent felony charges and those are defendants who are presumptively innocent and surely have more fulsome constitutional rights than convicted of felonies who are as judge McEwen observed still serving their sentences so in other words the Perez Garcia opinion does all of the legwork here on the historical analogues it goes through an extensive analysis of historical analogues that you know nonviolent crimes such as forgery and horse theft were capital offenses that many nonviolent crimes were punished with life sentences or estate forfeiture and Rahimi supports this sort of greater includes the lesser analysis so if you can punish those kinds of crimes at the founding with permanent and total disarmament through execution or through a life sentence or through estate forfeiture then surely a temporary disarmament such as this one is acceptable so I don't think the court you know even if it gets to the merits here I don't think the court needs to break any new ground I think that whatever rights a defendant has on supervision they certainly must be less than the rights you have before you are convicted and Perez Garcia already approved under the Second Amendment the disarmament of pretrial defendants if the court has no further questions we ask that the judgment be affirmed thank you to uphold the conviction the government continues to rely on definitions untethered from the statute or from the ASA to rely on unreasonable inferences rather than a chain of logic from the evidence and to rely on speculation and conjecture the contract payments were based on fair market value for services that NW PL provided can sit and it was set in advance so they provided time and resources this evidence is at 3 ER 4 10 to 12 503 to 505 and 90 are 1988 as well as 3 ER 401 and discussed in the reply brief at 16 through 17 in the opening brief at 20 through 23 the lies that the government talks about are either not actually lies or not based on a reasonable inference from the evidence so to say that NW PL did not get a return on investment from specimens that is a true statement their return was for services that's pursuant to the ASA the government's argument that that's a lie is circular it's using it both as proof of the crime and to establish the crime and if it has not independently established a crime it cannot show that that is a lie so it can't be used for both and NW PL also correctly reported that did not have an equity or financial interest in sterling or MTL it did not it was not a shareholder it was not an owner it was not an employee of those companies and how to contractual relationship it was essentially a subcontractor and there the lab guidelines required that they do not mention the services regarding sterling but the name of sterling itself was allowed to be said it's on all the again there's evidence that many people knew about sterling in particular so looking at the evidence makes clear that NW PL fulfilled valid contracts and therefore did not violate the anti-kickback statute it recruited new customers retained customers grew at Salesforce shipped sorted and directed samples and sterling and MTL received the benefit of their bargain and so did NW PL the government did not prove its case here and the court should vacate and dismiss the charge thank you your honors thank you counsel this matter is now submitted
judges: HAWKINS, McKEOWN, ALBA